OPINION
{¶ 1} Frankie Hall appeals from a decision of the Montgomery County Court of Common Pleas, which denied his motion to withdraw his guilty plea.
 {¶ 2} On August 31, 1990, Hall was charged with murder, in violation of R.C. 2903.02(A), and a firearm specification, stemming from the shooting death of Sterling Hohenbrink on August 25, 1990.[1] On December 12, 1990, Hall entered a negotiated plea of guilty to murder. The court sentenced Hall to an indefinite term of fifteen years to life imprisonment on that charge. In exchange for the guilty plea, the state dismissed the firearm specification. In addition, the state agreed to recommend an early parole release date and to write to the parole authority in a formal letter used by the parole board concerning its recommendation. The trial court also indicated that it would likewise complete the parole board form, indicating a recommendation for an early release date. The court indicated that based on "the last chart we received from the parole board," Hall would become eligible for early release "between seven months and ten years and seven months and twenty years, depending on good time or credit." However, the court made clear that "the exact date, not me nor anyone else can guarantee." Hall's counsel acknowledged that "Frankie is aware that the recommendation by the prosecutor and the judge are merely that. The parole authorities don't have to follow that. There's a probable likelihood that if he does well in prison, they will. But he understands they don't have to."
 {¶ 3} On July 23, 1991, a parole investigator spoke with the prosecuting attorney and the trial judge. As summarized in the investigator's post-sentence investigation report:
 {¶ 4} "Judge Gorman notes that the defendant has a long prior record, including convictions for rape, robbery, and aggravated robbery. Additionally, the violence in the Instant Offense speaks against early release and Judge Gorman states that she is strongly opposed to any consideration for mitigation on Mr. Hall's behalf.
 {¶ 5} "Assistant Prosecuting Attorney Dave Franceschelli told this officer on 7-23-91 that the facts in the Instant Offense speak for themselves. The defendant was extremely cold blooded, showed no remorse, and had no reason for the killing. The victim in this crime was a former police chief for the Madison Township Police Department, though that was unrelated to the reason for the killing. The victim's family was a nice family that suffered greatly as a result of Mr. Hohenbrink's death. The prosecutor also noted that both the defendant and his brother threatened the witnesses, all of whom were friends of the defendant. Prosecutor Franceschelli is also strongly opposed to the defendant's early release."
 {¶ 6} On December 13, 2000, Hall appeared before an institutional parole panel, consisting of Henry Grinner, a member of the parole board, and Richard Fitzpatrick, a hearing officer. The panel had, among other things, information regarding Hall's incarceration and the information from the post-sentence investigation. The panel concluded that Hall should serve 219 months of his sentence, and recommended that his case be continued until December 2008. At that time, Hall had served 123 months.
 {¶ 7} Subsequent to the denial of parole, Hall learned of the trial judge's and the prosecutor's recommendations to the parole board. Consequently, on October 1, 2001, Hall filed a motion to set aside his conviction and to withdraw his guilty plea, on the ground that the court and the state had breached the plea agreement. Following the filing of Hall's motion, the prosecutor and the trial judge both corresponded and spoke with the parole board, requesting that the board's recommendation be rescinded and that Hall be granted a new parole hearing. In their letters, they informed the board that they had agreed to recommend parole at the time of Hall's plea.
 {¶ 8} After receiving the prosecutor and trial judge's requests, the parole board voted to rescind the earlier decision and to grant Hall a rehearing. A new hearing was held on December 18, 2001, at which time the panel recommended "Board's discretion."[2] On January 28, 2002, a Central Office Board Review ("COBR") hearing was held before the full board. At that closed hearing, the board had the recommendations of Judge Gorman and the prosecutor, recommending Hall's early release. It did not have the prior written negative recommendations. After reviewing Hall's file, the board decided by a vote of eight to two to release Hall in June 2002.
 {¶ 9} Since 1996, certain parties have had the right to petition the parole board to hold an open hearing regarding their decision to grant parole to an inmate. In May 2002, the Office of Victims' Services ("OVS") requested such a hearing so that Hohenbrink's son and daughter-in-law could address the board. On July 9, 2002, the parole board held an open hearing at which time they heard from Hohenbrink's family and Hall's counsel. The board also had information regarding the "guideline range" for Hall's release, Hall's institutional infractions, and Judge Gorman's and Franceschelli's recommendations in favor of early release, as well as the confidential sheets from the COBR hearing. The board decided, by a six to three vote, to deny Hall parole and to continue his case until December 2008.
 {¶ 10} On February 7, 2003, a hearing on Hall's motion to withdraw his guilty plea was held before Judge Wagner, to whom the case had been transferred. The court overruled Hall's motion, finding that Hall had received specific performance by the state and that there was no manifest injustice justifying the withdrawal of his guilty plea.
 {¶ 11} In his sole assignment of error, Hall claims that the trial court erred by denying his motion to withdraw his plea. The parties agree that the state breached the plea agreement when prosecutor Franceschelli and Judge Gorman indicated their strong opposition to Hall's early release. It is further undisputed that the sole issue is the proper remedy for the breach.
 {¶ 12} "In Santobello v. New York (1971), 404 U.S. 268, the Supreme Court held that a prosecutor who induces a defendant to plead guilty based on certain promises has a duty to keep those promises. InSantobello, the defendant agreed to enter a plea of guilty to a gambling offense in return for the prosecutor's agreement to make no sentence recommendation. At the sentencing, the defendant received a term of one year upon the recommendation of the prosecutor who replaced the first prosecutor. Although the trial judge stated the prosecutor's recommendation made no difference to him, the Supreme Court held that the plea agreement had been breached. Chief Justice Burger wrote at page 262 and 263 of the Court's opinion:
 {¶ 13} "We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge."
State v. Skrip, Greene App. No. 2001-CA-74, 2002-Ohio-1788 (quotingSantobello, 404 U.S. at 262-63).
 {¶ 14} In concluding that the breach by the state warranted a remedy, the United States Supreme Court indicated that a non-prejudicial breach of a plea agreement must be remedied nonetheless. Santobello, supra (the fact that the trial court indicated that it would disregard the prosecutor's sentencing recommendation, which violated the plea agreement, did not negate the breach, and the trial court was required either to allow withdrawal of the plea or allow the defendant to be resentenced before another judge). Thus, Santobello indicates that the remedy provided to the defendant, who has not received the full benefit of his bargain as a result of the breach, should afford the defendant either the full benefit of his bargain or a "clean slate." We have stated that, under Santobello, the remedy for the state's breach of a plea agreement is either recission, or to allow the defendant to withdraw his plea, or to order specific performance that requires the state to fulfill its promise. State v. Wombold, Montgomery App. No. 20000, 2004-Ohio-1932, at ¶ 8. Santobello suggests that in evaluating whether specific performance has occurred, we should consider whether Hall actually received the benefit of his bargain, not whether the actions of the state, both in breaching the agreement and in trying to rectify its mistake, resulted in prejudice to Hall.
 {¶ 15} In the present case, the trial court found that Hall was entitled to and received specific performance of the plea agreement. In overruling Hall's motion to withdraw his plea, the trial court reasoned:
 {¶ 16} "[I]t appears that the proper course of action, once the plea agreement is breached, is to either allow the withdrawal of the plea or to conduct a new parole hearing with a different hearing officer and Parole Board member. Here, Defendant received a new hearing that appears to have been conducted by the same hearing officer and Parole Board member, but the results could hardly be complained of. Then Defendant's case was heard again by the full Parole Board. The Court finds that Defendant's complaint is not with the rehearing that granted him the relief he sought, but with the hearing of the full Board that denied him the relief he sought. The Court finds, however, that by conducting a hearing in front of the full Board with the proper recommendation in place, and with those recommendations considered by the full Board, the specific performance contemplated in Santobello has occurred.
 {¶ 17} "Ohio Criminal Rule 32.1 requires the withdrawal of a plea after sentencing to correct a `manifest injustice.' The Court finds no manifest injustice to have occurred here."
 {¶ 18} We review the court's decision for an abuse of discretion. SeeWombold, supra, at ¶ 9-11; Santobello, supra. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 19} Hall argues that the state did not and could not specifically perform the terms of the plea agreement and that the circumstances warranted the withdrawal of his plea. In a nutshell, he states that "[s]pecific performance is impossible because Mr. Hall can't get his first parole opportunity back and because the State's support for parole is no longer credible." Hall notes that the board member who presided over his December 2001 hearing had the negative recommendations by the prosecutor and trial judge, and that it was his responsibility to explain to the other members the factors that went into the December 2001 decision. Hall further argues that the state breached the agreement a second time when the OVS opposed his parole. He indicates that all state agencies, including the Adult Parole Authority, of which the OVS is a part, are bound by plea agreements.[3]
 {¶ 20} In evaluating Hall's arguments, we will first address whether the prosecutor and trial judge's 2001 communications to the parole board satisfy their obligations under the plea agreement to recommend an early release of Hall and, if so, whether those belated actions were sufficient, in light of the circumstances, to provide Hall "the benefit of his bargain." We next will turn to whether the state again breached the plea agreement when the OVS filed a petition for full board hearing. Upon review of the entire record, we cannot conclude that the trial court abused its discretion in finding that Hall had received specific performance by the state and in denying Hall's motion to withdraw his plea.
 {¶ 21} "A negotiated plea agreement is contractual in nature." Statev. Olivarez (Mar. 31, 1999)), Lake App. No. 97-L-288. Accordingly, "the terms of a given plea agreement must be ascertained before it can be determined whether a party breached the agreement." Id. Similarly, the terms must be ascertained to determine whether compliance has occurred.
 {¶ 22} During Hall's December 12, 1990, plea hearing, Franceschelli stated that the state "agreed to recommend and not oppose an early parole release date regarding this defendant in this particular crime, and writing to the parole authority in a formal letter that is used by the parole board. And, hopefully, I will have that within a few weeks and return it to the parole authority." The court stated in reply: "And in light of the circumstances, the Court has indicated that it too will fill out the form within — it's usually within the next four or five weeks to the parole authority indicating recommendation and not opposing an early release date." We note that the state's promise is not included within the written plea agreement signed by the parties.
 {¶ 23} After Hall complained that Judge Gorman and prosecutor Franceschelli had opposed his early release, in violation of the plea agreement, both the judge and the prosecutor sent letters to the parole board, indicating their support for Hall's early release and requesting that the two-person panel's recommendation from his December 2000 hearing be rescinded and a new hearing granted. In substance, Franceschelli's correspondence indicated that he had agreed at the time of Hall's plea that he would "recommend and not oppose an early parole release date regarding Mr. Hall." Judge Gorman also indicated to the parole board that the plea agreement required her to recommend an early release for Hall, and that she may be required to vacate the plea if she cannot act in accordance with the agreement.
 {¶ 24} We agree with Hall that these letters do not contain the rousing endorsement that Hall would have liked to have received. However, Hall was not entitled to an enthusiastic recommendation by the prosecutor and trial judge. Under the agreement, he was merely entitled to a recommendation in favor of an early release. See Olivarez, supra (rejecting the defendant's claim that the prosecutor "failed to muster much effort or enthusiasm on her behalf" or to use particular language in his recommendation when the plea agreement did not require the prosecutor to do so).
 {¶ 25} Hall asserts that the prosecutor's subsequent recommendation was undermined, because he did not state that the prior negative recommendation was incorrect. We agree that the state may not circumvent its obligations under the plea agreement. As stated by the Supreme Court of Wisconsin regarding a sentencing recommendation,
 {¶ 26} "While a prosecutor need not enthusiastically recommend a plea agreement, the court of appeals has stated that he or she `may not render less than a neutral recitation of the terms of the plea agreement.' `End runs' around a plea agreement are prohibited. `The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended.'"
 {¶ 27} State v. Williams (2002), 249 Wis.2d 492, 518, 637 N.W.2d 733,745 (citations omitted).
 {¶ 28} In the present case, although both the prosecutor and trial judge's letters allude to the fact that they originally had not complied with the plea agreement, they did not provide any details as to their original recommendations nor did they endorse those prior opinions. In fact, Judge Gorman specifically stated:
 {¶ 29} "[T]he rationale behind [the plea agreement] was that while Mr. Hall had committed a very serious offense, the facts were such that had the matter gone to trial, either a murder or a manslaughter conviction could have been the outcome. Additionally, the defendant was very young and perhaps amenable to rehabilitation in the institution. Therefore, all involved believed that if there was a recommendation for an early parole release, the parole board could evaluate his behavior in the institution and see if a period of ten years or so had resulted in a positive change of attitude such that it would make an early parole release appropriate. * * *
 {¶ 30} "I believe the rationale at the time of the plea was a correct one."
 {¶ 31} Accordingly, Judge Gorman's letter can reasonably be interpreted as a strong recommendation in favor of an early release. The prosecutor's letter accurately states that he recommends parole and that such a recommendation was required by the plea agreement. Although the prosecutor's letter does not enthusiastically endorse parole for Hall, it is not "less than neutral."
 {¶ 32} Parenthetically, we further note that the state and trial judge have failed to make their positive recommendations using the parole board's form, as promised at the plea hearing. However, we find no suggestion that such a requirement was integral to the agreement, and that the failure to use the form (and, instead, providing the recommendation by correspondence) was a breach of the plea agreement.
 {¶ 33} Accordingly, we agree with the trial court that the prosecutor and the trial judge belatedly met their obligations under the plea agreement when they corresponded with the parole board in November 2001.
 {¶ 34} We turn, therefore, to whether the submission of the two letters provided Hall with the benefit of his bargain. Hall argues, in essence, that the parole proceedings were irreversibly tainted by the prosecutor and trial judge's initial recommendations. He notes that the board member who presided over his December 2001 hearing had the negative recommendations by the prosecutor and trial judge, and that it was his responsibility to explain to the other members the factors that went into the December 2001 decision.
 {¶ 35} Based on the record, we conclude that the trial court did not abuse its discretion in concluding that, "by conducting a hearing in front of the full Board with the proper recommendation in place, and with those recommendations considered by the full Board, the specific performance contemplated in Santobello has occurred." As substantiated in the stipulations of the parties, the parole board voted to rescind the panel's denial of early release and to reopen his case. In December 2001, the panel, who was aware of the prior negative recommendations, recommended "Board's discretion." The panel indicated:
 {¶ 36} "Although mitigation is evident by statements from the judge and prosecutor, panel believes the institutional conduct should not be overlooked, although most tickets are over 5 yrs. old. Judge feels that the V[ictim] had participation in the case by bringing the gun to the crime scene. Both Judge and Prosecutor state the case is more of a manslaughter than a murder."
 {¶ 37} On January 28, 2002, the parole board held a closed COBR hearing with the entire board of ten members, only one of whom was aware of the prior negative recommendations. The board was presented with information about Hall, including his risk score, the guideline range for his confinement, the months he had served, his prior criminal history, a list of infractions during his incarceration, and the recent recommendations of the trial judge and prosecutor. The board did not have the original negative recommendations from Franceschelli and Judge Gorman.
 {¶ 38} In deciding to grant Hall early release, even though Hall served less time than indicated by the guidelines, the board stated the following mitigating factors:
 {¶ 39} "The Sentencing Judge and the Asst. Prosecutor that processed this offender's murder case have verbally and in writing expressed strong support for the offender's release at this time. Another factor considered by the `Full Board' when deciding this case was the fact that elements of the total offense behavior led the Board's major majority to determine the offense behavior was more akin to manslaughter than to murder. Considering these factors, and more[,] a decision was made to grant parole at this time."
 {¶ 40} In light of the facts that the board granted a rehearing, that they relied upon the positive recommendations, that nine of the ten board members did not receive the written negative recommendations, and that the board granted Hall an early release on or about June 1, 2002, the trial court could have reasonably concluded that the parole board, as a whole, was not tainted by the prior negative recommendations and that Hall had received the benefit of his bargain. We find no abuse of discretion in that conclusion.
 {¶ 41} Hall contends that the state breached the plea agreement for a second time when OVS filed a petition for a full board hearing after the board had decided to grant him an early release. We are not persuaded. Although the prosecutor stated at the plea hearing that "the State of Ohio has agreed to recommend and not to oppose an early parole release date regarding this defendant," Hall's defense counsel, Dennis Fallang, indicated that Hall was aware that the recommendations were limited to the prosecutor and the trial judge. As quoted, supra, Fallang stated: "Frankie is aware that the recommendation by the prosecutor and the judge are merely that." Moreover, upon review of the record, we find no basis to conclude that the OVS petition was an effort by the prosecutor to circumvent the plea agreement. To the contrary, the OVS petition indicates that the petition was filed on behalf of the victim's son and daughter-in-law, who attended the hearing and testified before the board. There is no evidence that OVS advocated against Hall receiving an early release. Without the participation of the victim's family in the plea bargaining process, we find no basis to conclude that the state was in position to preclude OVS from petitioning, on behalf of the victim's family, for a full board hearing to challenge Hall's early release.
 {¶ 42} We further note that the parole board's ultimate decision to deny parole and to continue Hall's case until December 2008 did not constitute a violation of the plea agreement. It is undisputed that Hall was not guaranteed an early release, nor was he told that the board was required to follow the prosecutor's and trial judge's recommendations. In addition, the board based its decision on "the offender's institutional misconduct, the elements of the crime substantiating that the offense behavior was murder, the victim's family not being apprised [sic] to the input by the judge and prosecutor to the board, the inmate's institutional misconduct impact on the court's plea agreement, and the victim's family's input." There is no suggestion that the decision was based, in any part, on the prior negative recommendations by the trial judge and the prosecutor.
 {¶ 43} Accordingly, we conclude that the trial court did not abuse its discretion when it concluded that Hall had received specific performance from the state and the trial judge, and when it denied Hall's request to withdraw his plea.
 {¶ 44} In reaching our conclusion, we note that, knowing what has transpired since the filing of Hall's motion to withdraw his plea, we (as was the trial court) are in a position to evaluate whether Franceschelli and Judge Gorman's November 2001 contacts with the parole board were sufficient to constitute specific performance of their agreement and, thus, whether Hall had received an adequate remedy for the breach. Although we find no abuse of discretion in the case before us, we caution that the same remedial measures may not be sufficient under different circumstances — factual or procedural. Suffice it to say, our decision herein is expressly limited to the circumstances before us — where we are aware of the subsequent actions by the prosecutor, the trial judge, and the parole board; where we have evidence of the communications by the trial judge and prosecutor and of their impact upon the parole board; and where we can reasonably evaluate whether the parole board was irreversibly tainted by the breach.
 {¶ 45} Hall's assignment of error is overruled.
 {¶ 46} The judgment of the trial court will be affirmed.
Fain, P.J. and Young, J., concur.
[1] According to the parole investigator's summary, at approximately 3:10 a.m. on August 25, 1990, Dawn McKibben drove into the driveway of her grandparents, Mr. and Mrs. Robert McKibben, with Frankie Hall, Brian Thomas, Kelly Cole, and Kathy Wiggington. The McKibbens awoke and went outside "in an attempt to get their grand-daughter into the house and the others off the property." According to the McKibbens, there was considerable loud talking and the neighbor's dog raised a "ruckuss". Sterling Hohenbrink, who resided across the street, "came over with a gun to help break up the difficulty." Some pushing and shoving ensued. The McKibbens reported that Hohenbrink urged two of the teenagers to walk home on Snyder Road. As Thomas and Cole began walking to the end of the driveway, Hall grabbed the gun from Hohenbrink, ran back a little bit, and shot him.
[2] During oral argument, Hall's counsel asserted that the January 28, 2002, hearing was held before a two-person panel and that no COBR hearing was held, an assertion which the state disputed. Hall's counsel has filed a Correction of Statement Made at Oral Argument, indicating his agreement with the state that a COBR hearing was held on January 28, 2002. He provided a chronology of relevant dates, indicating the decision maker, the decision, and a reference to the record. Although Hall's revised chronology no longer references a December 2001 hearing (of which he had complained in his brief), the record supports his prior assertion that a two-person panel reheard Hall's case at that time. During the hearing on the motion to withdraw Hall's plea, Richard Spence, Chief of Quality Assurance of the Ohio Parole Board, testified that the positive recommendations were available to the board members for the "modification vote[,] * * * the rescind rehear at the institution, the Central Office Board Review, and also for the full Board hearing." In discussing whether a confidential sheet was created during the July 2002 full-board hearing, Spence stated: "Full Boards don't require a confidential. What they utilize is the confidential sheet which was used at the previous board decision, so the confidential which was dated from the recent re-hear hearing which was December 18th, 2001, which was the same confidential which was used at the COBR hearing which was January 28th, 2002 is the same one that they had in front of them." In addition, Spence further stated, "there was no individual on the victim notify list for the December 2000 hearing, the December 18th, 2001 hearing, or the January 28th, 2002 Central Office Board Review." Reviewing the Joint Exhibit IX, the document was initially dated December 18, 2001; that date was crossed out and "COBR 1-28-02" was written above it. The time served calculations were modified, and the comments/reasons on the "Ohio Parole Board CONFIDENTIAL" sheet can reasonably be read only as comments by the panel.
Thus, while it is undisputed that a COBR hearing occurred on January 28, 2002, it also appears that a panel hearing was previously held on December 18, 2001, at which time the panel recommended "Board's discretion."
[3] The Office of Victims' Services was created by Senate Bill 2 as part of the Division of Parole and Community Services. R.C.5120.60.