OPINION
{¶ 1} Defendant-appellant Marcus L. Burks ("appellant"), appeals from the April 20, 2004 judgment of the Franklin County Court of Common Pleas denying his post-sentence motion to withdraw his guilty plea. For the reasons that follow, we reverse.
 {¶ 2} By indictment filed January 10, 1996, appellant was charged with five counts of rape, three counts of attempted rape, one count of kidnapping and one count of gross sexual imposition. Each of the counts carried firearm specifications. After trial by jury, appellant was found guilty of four counts of rape, two counts of attempted rape, one count of kidnapping and one count of gross sexual imposition. Appellant appealed the jury's verdicts. On June 30, 1997, we reversed the judgment and remanded the cause for a new trial. State v. Burks (June 30, 1997), Franklin App. No. 96AP-1258.
 {¶ 3} After remand, and pursuant to a plea agreement, on August 10, 1998, appellant entered a guilty plea to one count of attempted rape without specification, and a nolle prosequi was entered to the remaining counts and specifications. Appellant signed a guilty plea entry, which outlined the plea agreement. Specifically, the guilty plea entry stated the State recommended a sentence of "5 to 15 with shock after five full years of incarceration." Pursuant to Crim.R. 11(F), the State verbally placed the recommended sentence and its specifics on the record.
 {¶ 4} Prior to imposing sentence, the court addressed appellant:
THE COURT: All right. Other than the plea offer which has been made in the case, a sentence of five to fifteen years with credit for the time that you have served and that the State would agree to shock probation after serving five full years, other than that promise which is made part of this plea agreement, has anybody threatened you in any way or made any other promises to you in order to get you to change your plea of not guilty and enter a plea of guilty at this time?
THE DEFENDANT: No, to my understanding. The reason for making this plea here is that this deal is guaranteed, correct?
THE COURT: That you are going to be granted shock probation in five years.
THE DEFENDANT: And that will be December of 2000, right?
THE COURT: I do not know because I don't know how much jail-time credit you have right now. (August 10, 1998 Tr. at 6.)
 {¶ 5} The judge confirmed with the State that the victim agreed to the plea agreement. Thereafter, the court imposed a sentence of five to 15 years of incarceration, with credit for 953 days of jail time previously served. This sentence was journalized by entry dated August 11, 1998.
 {¶ 6} On July 11, 2001, appellant filed a "Motion for Super Shock, or in the Alternative, Motion to Modify His Sentence." ("July 11, 2001 Motion for Shock Probation.") In his motion, appellant sought enforcement of the plea agreement "which was approved by Judge Pfeiffer and the prosecuting attorney," or in the alternative, that the court "modify his sentence to make him eligible for judicial release." (Appellant's July 11, 2001 Mot. at 2, 3.) The State filed a memorandum in response, deferring to the court for a ruling. This motion was denied without a hearing by the trial court on August 13, 2001. At the time the court denied this motion, appellant had served five years and 227 days of incarceration.
 {¶ 7} On April 28, 2003, appellant filed a "Motion for Shock Probation/Shock Parole, Motion to Enforce Plea Agreement, Alternatively Motion to Withdraw Previously Entered Plea." ("April 28, 2003 Motion for Shock Probation" or "April 28, 2003 Motion to Withdraw.") Therein, appellant argued his plea agreement rested on the "promise and commitment made by the court that he would be released after a five-year sentence, including any jail time credit." (Appellant's April 28, 2003 Mot. at 6.) In its memorandum contra, the State interpreted the plea agreement to state that shock probation was possible after appellant served five full years of incarceration, and that the agreement was not binding on the court. Further, the State emphasized that appellant's eligibility for shock probation was based on his behavior in prison.
 {¶ 8} By entry on August 6, 2003, and after a hearing held on July 25, 2003, the trial court granted appellant's April 28, 2003 Motion for Shock Probation.[1] The terms and conditions of appellant's probation included in part that he "enter and successfully complete the [community based correctional facility] ("CBCF") for the full six (6) months." (August 6, 2003 entry.) Subsequently, the court and the parties learned that appellant was not eligible for placement in CBCF because he was convicted of a sex offense. As a result, appellant remained in the county jail awaiting placement in an alternative treatment program.
 {¶ 9} On February 6, 2004, appellant filed a "Motion for Immediate Releasse [sic] From Incarceration Pursuant to the Previous Order Granting Defendant's Motion for Shock Probation/Shock Parole Defendant's Motion to Enforce Plea Agreement." ("February 6, 2004 Motion for Immediate Release.") Therein, appellant sought enforcement of the court's August 6, 2003 decision granting shock probation, and argued that his continued detention violated the terms of the plea agreement. After the court conducted a hearing to consider appellant's motion, the court issued a decision denying the same on March 12, 2004. In its decision, the court stated:
The Court, because of [appellant's] prior criminal record, institutional summary of rules infractions, lack of sex offender counseling while incarcerated and the finding that he is [sic] a high risk of reoffending, believed a long term in-patient program was necessary. The condition of CBCF or comparable facility was not an attempt to thwart the plea agreement, but instead was necessary to fulfill the Court's obligation of properly monitoring and supervising a probationer. However, because of eligibility requirements which Defendant did not meet, this condition cannot be performed. The Court does not believe that that circumstance requires it to now abandon its responsibility and negate this condition. In this matter, the court finds it cannot properly supervise Defendant if he does not have the benefit of the intensive counseling provided by an in-patient, sex offender program.
(March 12, 2004 Decision at 5.)
The court concluded by vacating the prior entry granting appellant's motion for shock probation.[2]
 {¶ 10} On April 12, 2004, a hearing was held on appellant's April 28, 2003 Motion to Withdraw. At the hearing, the court specifically discussed the previously imposed condition of appellant's probation which required his placement in a treatment program:
[T]he length of time that Mr. Burks has been in the Franklin County corrections system initially was because the Court had ordered CBCF as a transitional thing because I felt that way he could get appropriate counseling and treatment. They would not accept him because of this being a sex offense.
The Court then had the probation officer looking for an appropriate intensive lengthy period of treatment which would include some type of sex-offender counseling, and there just wasn't anything available.
So it isn't anything that Mr. Burks had done to get in the way of carrying out the Court's conditions on this case.
* * *
I reviewed the transcript of the plea hearing, * * * [and] there isn't anything in there that says [appellant] has to be on good behavior [during his term of incarceration]. In fact, there was specific language in there about he fully expected to be released after five years.
* * *
His reason [for requesting withdrawal of his guilty plea] is, he's not getting what he bargained for here, pure and simple. He entered this plea with the understanding — and the transcript of the hearing is quite clear. He believed he was getting out in five years. I think there is, from my standpoint on it, if you will, an impossibility of performance if we're talking contract terms * * *.
The transcript of the plea hearing on this thing * * * [shows that] when the Court asked about any promises being made to him or something along that nature, he said, `Am I getting out after five years?' And I said, `Yes.'
And now I cannot release him after five years because I'm not going to release him just out into the community. I think there needs to be a transitional thing, and, therefore, he's not getting what he bargained for out of this.
(April 12, 2004 Tr. at 5, 9, 11, 14.)
At the conclusion of the hearing, the court orally granted appellant's motion to withdraw his guilty plea and set a bond to allow appellant's release and ensure his appearance for trial. Additionally, the court ordered that appellant submit to random drug screens and that he have no contact with the victim in the case.
 {¶ 11} Despite its expressed intention to grant appellant's motion to withdraw his guilty plea, the court issued an entry on April 20, 2004 denying the same. In its entry, the court reasoned that if it were to grant the motion to withdraw the guilty plea, appellant and the State "are placed in the position of trying a nine year old case," and "neither party would receive the benefit of the plea agreement that they entered, i.e., a final resolution of the matter." (April 20, 2004 entry at 2.) The court noted its concern regarding the "lack of an appropriate step [for appellant] between prison and the community." Id. at 2. The court confirmed with the probation department that it had "other options" to satisfy its concern, and reinstated appellant's super shock probation.[3]
Additionally, the court's April 20, 2004 entry vacated the decision and entry denying appellant's motion for immediate release, and rendered it moot.
 {¶ 12} The court held a hearing on April 26, 2004, to impose the terms of appellant's probation. The court stated that granting the motion to withdraw appellant's guilty plea "clearly was not an appropriate action to be taken and that was why I never put an entry on journalizing what was indicated in court." (April 26, 2004 Tr. at 3.) On April 29, 2004, the court journalized an amended entry granting appellant's motion for super shock probation. In this entry, the court imposed a term of probation for a period of five years, imposed several conditions and restrictions on appellant, and placed appellant on intensive supervision and on the sex offender caseload.
 {¶ 13} Appellant appeals from the April 20, 2004 trial court entry denying his motion to withdraw his guilty plea, asserting the following assignments of error:
FIRST ASSIGNMENT OF ERROR
The trial court impugned the integrity of the Judicial process and violated Mr. Burks' rights to due process under the United States and Ohio constitutesion by denying his motion for leave to withdraw his guilty plea where Mr. Burks entered the plea based on the court's promise that it would release him on shock probation after he served five years of incarceration, and where the court failed to release him as promised, but released him 1,217 days after the five-year period expired.
Second assignment of error
The state breached the plea agreement when the prosecutor argued that the court should not release Mr. Burks as required by the plea agreement. This breach violated Mr. Burks' rights under the due process clauses of the United States and Ohio constitutions and invalidates the guilty plea.
 {¶ 14} Appellant's first assignment of error references a motion for leave to withdraw his guilty plea. Our review of the record reflects appellant never filed a motion for leave to withdraw his guilty plea. We will therefore treat his assignment of error, as did the parties, as addressing the denial by the court on April 20, 2004 of his April 28, 2003 Motion to Withdraw. {¶ 15} Appellant argues his plea was based on an agreement that the court would grant him shock probation after he served five full years of incarceration. He further asserts that the trial court's August 13, 2001 denial of his July 11, 2001 Motion for Shock Probation constituted a breach of this plea agreement as at the time of the filing of such motion, he had served well over the agreed upon five full years of incarceration.
 {¶ 16} The parties now agree that the plea agreement was binding on the court and that the court's August 13, 2001 denial of appellant's Motion for Shock Probation constituted a breach of that plea agreement. Appellant acknowledges that the court attempted to remedy the breach of its promise through its grant of his April 28, 2003 Motion for Shock Probation, but imposed an impossible condition of probation by requiring appellant to enter and successfully complete CBCF. Moreover, appellant argues the court's additional attempt to remedy the broken plea agreement by ultimately reinstating him on shock probation on April 20, 2004 could not provide him relief as the benefit of his bargain under the plea agreement was long past. Appellant asserts that the court's amended entry of April 29, 2004, granted him shock probation approximately 1,217 days (or over three years) after the expiration of his serving five full years of incarceration. Thus, he argues, the remedy of specific performance is an impossible and inappropriate solution to cure the court's breach. Because he did not receive the benefit of his bargain, appellant urges the only available remedy for the court's breach is to allow him to withdraw his guilty plea.
 {¶ 17} In response, the State asserts that the extraordinary remedy of allowing appellant to withdraw his plea is unwarranted. Although the State concedes the breach herein, it argues that by granting appellant's motion for shock probation on August 6, 2003, the court appropriately enforced specific performance of the plea agreement. The State urges that since it is within the court's discretion to impose conditions of probation, once it was determined that CBCF was not an available option, the court properly modified the conditions of appellant's probation by seeking an alternative treatment program. Because the court was in the best position to determine the appropriate remedy for breach of the plea agreement, the State asserts that the court properly denied appellant's motion to withdraw his guilty plea.
 {¶ 18} It has been recognized that plea agreements are essential to the prompt disposition of criminal proceedings. Santobello v. New York
(1971), 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427. A plea bargain is subject to contract law standards. State v. McBride, Franklin App. No. 04AP-282, 2004-Ohio-6257 at ¶ 7; Walker v. Ghee (Jan. 9, 2002), Franklin App. No. 01AP-960, 2002 Ohio App. LEXIS 252 at *6. Generally, however, a plea agreement between the State and the defense is not binding on the court, as the ultimate decision of whether or not the agreement is accepted rests with the trial judge. State v. Mathews (1982),8 Ohio App.3d 145, 146, 8 OBR 202, 456 N.E.2d 539.
 {¶ 19} Because a plea bargain is contractual in nature, we must first examine the nature of the plea agreement to determine what the parties understood at the time of appellant's plea and determine whether and when a breach occurred. We agree with the trial court's characterization that the plea agreement herein was a promise by the court to grant appellant's motion for shock probation, with the sole condition that he serve five full years of incarceration including previously earned jail time credit. Based on the colloquy between the court and appellant at the hearing on August 10, 1998, we find the plea agreement herein became binding on the court at that time. The court clearly promised to impose a prison term in which shock probation would be granted after appellant served five full years of incarceration. When a trial court accepts a plea bargain and makes a promise to impose sentence in a certain manner, consistent with the agreement, it becomes bound by said promise. SeeState v. Bonnell, Clermont App. No. CA01-12-094, 2002-Ohio-5882, at ¶ 18 and United States v. Brummett (C.A.6, 1986), 786 F.2d 720; 1986 U.S. App. LEXIS 23192 at *6.
 {¶ 20} We further agree with the trial court and the parties that the court first breached the plea agreement through its denial of appellant's motion for shock probation on August 13, 2001. Appellant had served his five full years in this case on or about December 29, 2000, given his 935 days jail time credit at the time of the plea on August 10, 1998. Thus, we now must review the appropriateness of the trial court's choice of a remedy for that breach, i.e., its attempt to impose specific performance.
 {¶ 21} The remedy for a breach of a plea agreement may be by either withdrawal of the negotiated plea or specific performance of the terms of the plea agreement. Santobello, at 263; Matthews, at 146; State v.Crowder (July 9, 1998), Franklin App. No. 97AP-1630, 1998 Ohio App. LEXIS 3125 at *5. The underlying principle behind granting relief from a breached plea agreement is that the breach "impairs the consensual character of the plea." State v. Thompson (June 17, 1987), Wayne App. No. 2240, 1987 Ohio App. LEXIS 7744 at *4 citing Mabry v. Johnson
(1984), 467 U.S. 504, 508, 509, 104 S.Ct 2543; State v. Stanley (Dec. 31, 1981), Cuyahoga App. No. 43469, ("the effectiveness of plea bargaining would be jeopardized if trial judges could make promises and later back out of them"). The trial court has discretion to fashion an appropriate remedy for breach of a plea agreement.
 {¶ 22} The State contends that appellant did not request enforcement of the plea agreement until his April 28, 2003 Motion for Shock Probation, and that the court enforced specific performance of the plea agreement by granting the same on August 6, 2003. Specific performance is defined as "the rendering, as nearly as practicable, of a promised performance through a judgment or decree." Black's Law Dictionary (8 Ed.Rev. 2004) 1435. The general rule is that a party seeking specific performance of a contract must show performance on his part. Dell v.Bradburn (1981), 2 Ohio App.3d 139, 140, 2 OBR 153, 440 N.E.2d 1359, citing George Wiedemann Brewing Co. v. Maxwell (1908), 78 Ohio St. 54,84 N.E. 595, paragraph two of the syllabus. "If damages for [a] breach [of contract] will not provide an adequate remedy, than an action for specific performance will lie." 84 Ohio Jurisprudence 3d (2003) 273, Specific Performance, Section 1. In evaluating whether specific performance of a plea agreement was a proper remedy for a breach, we must determine whether after enforcing the specific terms of the plea agreement, appellant actually received the benefit of his bargain.Santobello, supra, at 262.
 {¶ 23} The State relies upon State v. Hall (July 2, 2004), Montgomery App. No. 20025, 2004-Ohio-3561, in support of its conclusion that specific performance in this case allowed appellant to receive the benefit of his bargain. In Hall, the defendant pleaded guilty to murder in exchange for the promise of the court and the prosecution to recommend that the defendant receive early release to the parole board. At the time he entered his plea on December 12, 1990, the court indicated that the exact date the defendant would become eligible for early release was unclear. Moreover, the court emphasized to the defendant that the recommendation of the judge and the prosecutor were not binding on the parole board. Id. at ¶ 2.
 {¶ 24} On July 23, 1991, the court and the prosecutor breached the plea agreement by voicing their opposition to the defendant's release on parole. After the defendant filed a motion to withdraw his guilty plea, the prosecutor and the trial court corresponded and spoke with the parole board again, and recommended the defendant's early release. Notwithstanding these positive recommendations, the board ultimately decided to deny the defendant's parole. The Second District found that the trial court acted within its discretion as the defendant received the benefit of his bargain through the remedy of specific performance when the prosecution and the trial judge recommended his early release to the parole board, and by denying appellant's motion to withdraw his guilty plea. Id. at ¶ 43. The court emphasized that the defendant was not guaranteed an early release, nor was he told that the board was required to follow the prosecutor's or the court's recommendations. Id. at ¶ 42.
 {¶ 25} We find that the State's reliance on Hall is misplaced. UnlikeHall, the parties and the court agree that plea agreement in this case was time specific; specifically, that the agreement was premised on the court's grant of appellant's motion for shock probation after he served five full years of incarceration. Further, the colloquy between the court and appellant at his plea and sentencing hearing in 1998 demonstrates the court's promise that appellant would be granted shock probation after he fulfilled his end of the agreement, that being serving five full years of incarceration. The promise here was to grant shock probation, not merely recommend a resolution to another entity such as a parole board.
 {¶ 26} We also disagree with the State's position that appellant did not seek enforcement of the plea agreement until his April 28, 2003 Motion for Shock Probation. Appellant first moved for enforcement of the plea agreement through his July 11, 2001 Motion for Shock Probation after fully serving five years and 194 days of incarceration. In this motion, appellant brought to the attention of the court its reliance on a plea agreement "agreed to by Judge Pfeiffer." Had the court granted appellant's July 11, 2001 motion for shock probation, it would have been within the court's discretion to impose conditions of probation and such would have been in timely compliance with the agreement.
 {¶ 27} We believe that the trial court intended to comply with the spirit of the plea agreement through its grant of appellant's motion for shock probation on August 6, 2003 and again through its reinstatement of appellant's shock probation on April 20, 2004. However, these rulings were untimely and violated the specific agreed upon promise to grant appellant shock probation after serving five full years of incarceration.[4]
Because five full years had long past (by over three years) by the time appellant was granted shock probation, specific performance on these facts is impossible as appellant can not receive the benefit of his bargain.
 {¶ 28} A court is not compelled to impose the remedy of specific performance for a broken plea agreement, as permitting a defendant to withdraw his plea is within the range of appropriate remedies. Mabry,
supra, at 445, fn. 11; Santobello, supra, at 263. If a trial court determines that sentencing appellant in accordance with the plea agreement is no longer appropriate, it must allow appellant the opportunity to withdraw his guilty plea. Bonnell at ¶ 23. As specific performance is impossible given the facts and circumstances in this case, appellant must be permitted to withdraw his plea.
 {¶ 29} Appellate courts review of rulings by trial courts on motions to withdraw guilty pleas is on an abuse of discretion standard. Hall,
supra. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Montgomery (1991), 61 Ohio St.3d 410,575 N.E.2d 167; State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144. Because withdrawal of appellant's guilty plea is the only remaining remedy for the breach of the plea agreement in this case, the trial court abused its discretion in denying the same. Accordingly, appellant's first assignment of error is sustained. Our resolution of appellant's first assignment of error renders his second assignment of error moot.
 {¶ 30} Based on the foregoing, appellant's first assignment of error is sustained to the extent that the court abused its discretion by denying appellant's motion to withdraw his guilty plea, and his second assignment of error is rendered moot. The judgment and sentence of the Franklin County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Brown, P.J., and Klatt, J., concur.
[1] The record does not contain a transcript of the July 25, 2003 hearing for our review.
[2] The trial court's March 12, 2004 entry refers to a July 25, 2003 entry granting shock probation. However, we note that the hearing on appellant's April 28, 2003 Motion for Shock Probation occurred on July 25, 2003, and the entry granting his motion was journalized on August 6, 2003.
[3] The court interchangeably used the term "shock probation" in its August 6, 2003 entry and "super shock probation" in its April 20, 2004 entry and April 29, 2004 entry, which we find is of no consequence to this opinion.
[4] Even if the court's granting of shock probation on August 6, 2003 could be construed as timely, the fact that this entry was vacated on March 12, 2004, negates the effectiveness of such ruling.