[Cite as *State v. Willis*, 2013-Ohio-2531.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98847**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TIMOTHY WILLIS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED; CONVICTIONS VACATED;
REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-559905

**BEFORE:** Kilbane, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** June 20, 2013

**ATTORNEY FOR APPELLANT**

Robert A. Dixon
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Adrienne E. Linnick
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Timothy Willis, appeals his convictions and sentence for kidnapping, aggravated burglary, aggravated robbery, and grand theft. Finding merit to the appeal, we reverse the judgment, vacate Willis's convictions, and remand for a new trial.

{¶2} In Cuyahoga C.P. No. CR-559905, Willis was charged with three counts of kidnapping, felonious assault, aggravated burglary, aggravated robbery, and grand theft, resulting from the kidnapping of Leslie Slocum ("Slocum") on July 21, 2011. Each of the counts, except grand theft, carried a one- and three-year firearm specification.

{¶3} In Case No. CR-560590, Willis and codefendant, Tony Brown ("Brown"), were charged in an 11-count indictment resulting from a home invasion on Selwyn Avenue in Cleveland Heights on April 7, 2011.[1] Both men were charged with two counts of aggravated burglary, five counts of kidnapping, aggravated robbery, felonious assault, and theft. Brown was also charged with having a weapon while under disability. Each of these counts, except theft and having a weapon while under disability, carried a one- and three-year firearm specification.

{¶4} Both cases were joined for trial, and proceeded before a jury in July 2012. While Willis was found not guilty of all the charges in Case No. CR-560590, facts

---

[1]Brown appeals his conviction and sentence in Case No. CR-560590. *See State v. Brown*, 8th Dist. No. 98881.

concerning both cases will be discussed for purposes of clarity, because Slocum was present at the earlier incident on Selwyn Avenue.

{¶5} In Case No. CR-560590, members of the Sanderfer family testified that they were victims of a home invasion. The Sanderfer members include Desdemona Sanderfer ("Desdemona"), her minor daughter, M.D., Desirae Sanderfer ("Desirae"), and Cedric Sanderfer ("Cedric"). On April 7, 2011, four masked gunmen forced their way into the residence on Selwyn Avenue in Cleveland Heights, Ohio. The men forced the family down into the basement. They demanded money and ordered Desirae to locate the money. Desirae gave the men approximately $7,000 in cash from her mother's dresser. The men also took cell phones and jewelry.

{¶6} The home invasion was interrupted when Slocum arrived at the house to pick up M.D. for school. She pulled up in the driveway and honked the car horn. M.D. did not come outside, so she attempted to enter the house. As she reached for the door, one of the gunmen grabbed her shirt collar. She grabbed back, thinking Cedric was playing a joke on her. She realized it was not Cedric, and both of them fell to the ground. The masked gunman then pointed his gun in her face. She started to scream, and all the gunmen fled the scene. She got into her car and called 911. The next door neighbor heard the commotion and also called 911. An investigation ensued and Brown's DNA was identified on a torn t-shirt used as a mask that Slocum found in the Sanderfer's bathroom. Months later, in September 2011, Desirae recognized Willis's

picture from a news broadcast on TV and identified him as one of the perpetrators. She recognized him because she was able to observe his face when he brought her upstairs.

{¶7} In Case No. CR-559905, Slocum testified that she was attacked while in the garage of her apartment building located in East Cleveland, Ohio. As she exited her vehicle, she observed two masked men running toward her. One of the men had a gun and used it to hit her in the head. The other man punched her in the face. They grabbed her purse and car keys. The men then duct-taped her eyes and mouth shut, duct-taped her ankles together, and tied her wrists together. The men pushed her in the trunk of her car and drove her around. The men demanded money from her and threatened to kill her if she did not tell them where the money was located. When speaking with her, one of the men referred to her by her nickname. Eventually, one of the men told her that he was going to release her. The men partially opened the trunk and cut the tie around her wrists. The men left the scene while she counted to 50. She then opened the trunk and drove to the East Cleveland Police Department to report the incident. She returned to her apartment to find it ransacked. She testified that $4,000 in cash and some jewelry were taken from her apartment. Upon processing Slocum's vehicle, two latent prints were lifted from the trunk lid that matched the right and left thumb prints of Willis.

{¶8} At the conclusion of trial, the jury found Willis guilty of all three counts of kidnapping, aggravated burglary, aggravated robbery, and grand theft. The jury found him not guilty of felonious assault and all of the firearm specifications. The trial court sentenced him to ten years in prison on each of the following counts: Count 1

(kidnapping), Count 2 (kidnapping), Count 5 (aggravated burglary), and Count 6 (aggravated robbery). The trial court sentenced him to five years on Count 3 (kidnapping), and one year on Count 7 (grand theft). The trial court ordered that Counts 1 and 2 be served concurrent to each other, but consecutive to Count 3; Counts 5 and 6 be served concurrent to each other, but consecutive to Counts 1, 2, and 3; and Count 7 be served concurrent to Counts 1 and 2 and Counts 5 and 6, for a total of 25 years in prison.

{¶9} Willis now appeals, raising the following ten assignments of error for review.

### Assignment of Error One

The lower court erred and denied [Willis] due process of law and a fair trial when it admitted evidence of flight or resisting arrest[,] which was unrelated to the crime charged.

### Assignment of Error Two

The lower court violated [Willis's] right to present a complete defense as guaranteed by the sixth and fourteenth amendments to the constitution of the United States.

### Assignment of Error Three

[Willis] was denied due process of law and a fair trial due to [*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215] violations by the state.

### Assignment of Error Four

[Willis] was denied due process of law and a fair trial due to admission of prejudicial "other acts" evidence.

## Assignment of Error Five

[Willis] was denied due process of law and a fair trial when the court permitted expert fingerprint identification testimony without expert report in violation of Evid.R. 16(K).

## Assignment of Error Six

The actions of the trial court continually denying counsel access to the record and criticizing counsel in the presence of the jury denied [Willis] a fair trial as guaranteed by the sixth amendment to the constitution of the United States.

## Assignment of Error Seven

[Willis] was denied his sixth amendment right to effective assistance to counsel.

## Assignment of Error Eight

The lower court committed plain error by failing to consider the issue of merger of counts for purposes of sentencing pursuant to [*State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061].

## Assignment of Error Nine

The verdict and judgment below are against the manifest weight of the evidence on all counts.

## Assignment of Error Ten

The evidence below was legally insufficient to sustain verdicts of guilty on all counts.

{¶10} At appellate oral argument, Willis's counsel focused on the first and second assignments of error. We will address these assignments of error, as well as the tenth assignment of error, and for the reasons set forth below, we find that the second assignment of error is dispositive.

## Evidence of Flight

**{¶11}** In the first assignment error, Willis argues the trial court erred by admitting evidence of his flight from U.S. Marshals when he was arrested because his arrest occurred ten months after the Selwyn Avenue incident in April 2011. He further argues that the trial court's instruction to the jury on the consciousness of guilt directed the jury to make an impermissible and highly prejudicial inference of guilt. As a result, he claims that his rights to due process and a fair trial were violated.

**{¶12}** We note that the Ohio Supreme Court has held that evidence of flight is admissible to show consciousness of guilt. *State v. Taylor*, 78 Ohio St.3d 15, 27, 1997-Ohio-243, 676 N.E.2d 82; *State v. Eaton*, 19 Ohio St.2d 145, 249 N.E.2d 897 (1969), paragraph six of the syllabus, *vacated as to death penalty*, 408 U.S. 935, 33 L.Ed.2d 750, 92 S.Ct. 2857 (1972). "'It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" *Eaton* at 160, quoting 2 Wigmore, *Evidence,* Section 276, at 111 (3 Ed. 1940).

**{¶13}** Evidence of a defendant's flight from the jurisdiction does not have to be contemporaneous with the underlying offense to be admissible. *State v. Alexander*, 8th Dist. No. 51784, 1987 Ohio App. LEXIS 7187 (Feb. 26, 1987). In *Alexander*, appellant argued the evidence of his flight had little probative value because the fact that six months passed between the offense and his flight indicated that there was little connection between the two. We found appellant's argument lacked merit, stating that:

"[a]dmissibility of evidence of flight has not been made contingent upon how much time passes between the offense and the defendant's flight." *Id.*

{¶14} Likewise, in the instant case, evidence of Willis's flight was properly admitted, despite the length of time between the offense and the date of his arrest. Moreover, it has long been recognized that it is not an abuse of discretion for a trial court to provide a jury instruction on flight if there is sufficient evidence presented at trial to support that the defendant attempted to avoid apprehension. *State v. Kilpatrick*, 8th Dist. No. 92137, 2009-Ohio-5555, ¶ 16, citing *State v. Benjamin*, 8th Dist. No. 80654, 2003-Ohio-281; *United States v. Dillon*, 870 F.2d 1125 (6th Cir.1989); and *United States v. Felix-Gutierrez*, 940 F.2d 1200 (9th Cir.1991).

{¶15} Here, the testimony elicited at trial provided a sufficient basis for the jury instruction on flight. The state presented testimony from U.S. Marshals that they arrested Willis on February 21, 2012. The officers knocked on Willis's door and announced that they were police. Willis was then seen jumping out of a third floor window fleeing on foot. The officers chased him on foot until they apprehended Willis while he attempted to climb an eight-foot barbed-wire fence.

{¶16} Based on the foregoing, we find that sufficient evidence existed to support the flight instruction.

{¶17} Therefore, the first assignment of error is overruled.

<u>Right to Present a Defense</u>

**{¶18}** In the second assignment of error, Willis argues that he was denied his constitutional right to present a complete defense when the trial court did not allow him to present evidence from defense investigator Brenda Bickerstaff ("Bickerstaff"). Prior to the start of trial, the state moved to exclude evidence of Bickerstaff's trunk-closing demonstration. The court denied the admission of the evidence stating that:

> We don't do reenactments from investigators. This is not a TV program. * * * [Bickerstaff] is not an expert. No, I'm not allowing that. You can make your objection. Preserve it for the record but I'm not going to allow an investigator to do a reenactment and present to the jury as if it's evidence.

**{¶19}** Defense counsel explained that:

> It's not a reenactment of the crime. The State will allege that my client's two thumb prints are on top of the trunk. The testimony will be they go there when he was closing the trunk shoving the one victim in the trunk.
>
> All it is is a picture of the trunk up showing it's impossible to get your thumb prints there. This is not a reenactment of the crime.

**{¶20}** At the close of the state's case, defense counsel proffered that Bickerstaff would have testified that she found the same make and model of Slocum's car and took photographs of a man who is 6 feet 6 inches tall (Willis's height) standing next to the trunk while it was opened and closed. Bickerstaff also would have testified about a video of a mock trunk opening, demonstrating that it would have been physically impossible to place one's thumbs in the position found by investigators. Defense counsel stated that "had these exhibits * * * been allowed[, they] would have shown it's a physical impossibility. That someone would have to be twelve or thirteen feet tall[.]

[S]o she would have testified that she located the car, took the photos and took the video." The trial court stood by its prior ruling, reasoning that "[y]ou can't argue something not in evidence. I'm not going to allow you to argue to the jury that it's not physically possible because there is no evidence in the record to say that."

{¶21} The United States Supreme Court has long held that an accused's right to establish a defense "is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The *Washington* court stated:

> This Court had occasion in *In re Oliver*, 333 U.S. 257[, 68 S.Ct. 499, 92 L.Ed. 682] (1948), to describe what it regarded as the most basic ingredients of due process of law. It observed that:
>
> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense — a right to his day in court — are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." 333 U.S. at 273. (footnote omitted.)
>
> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. *Id.*

{¶22} The right to present witnesses, however, is not unfettered. "The accused 'must at least make some plausible showing of how [a witness's] testimony would have been both material and favorable to his defense.'" *Cleveland v. Alexander*, 8th Dist. No. 92282, 2009-Ohio-4566, ¶ 27, quoting *U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102

S.Ct. 3440, 73 L.Ed.2d 1193 (1982). *See also State v. Abdelhaq*, 8th Dist. No. 74534, 1999 Ohio App. LEXIS 5573, (Nov. 24, 1999). "In making such a determination, courts should afford some leeway for the fact that the defendant necessarily proffers a description of the material evidence rather than the evidence itself." *Valenzuela-Bernal*, 458 U.S. at 874, 102 S.Ct. 3440, 73 L.Ed.2d 1193.

**{¶23}** In the instant case, the charges against Willis required the state to prove Willis kidnapped Slocum by placing her in the trunk of her car. Slocum could not identify the assailants because they wore masks and her eyes were taped shut. The thumb print evidence adduced by the state was the only evidence placing Willis at the scene of the crime. While this evidence is sufficient to sustain the convictions as discussed below, defense counsel proffered evidence that it would have been physically impossible to place one's thumbs in the position found on Slocum's truck. Defense counsel stated:

> The purpose of the testimony, Your Honor, was to show two things. One, that the police could have done this and didn't, and two, Your Honor, the State has told me in pretrial, and I think they said in opening statement that they're going to argue that the thumb prints were put on the trunk when [Willis] was closing the car, the car trunk, after he put poor Miss Slocum in it.

> Your Honor, I believe these exhibits had they been allowed would have shown it's a physical impossibility. That someone would have to be twelve or thirteen feet tall[.]

**{¶24}** While we admit to some skepticism that this would have exculpated Willis, this evidence, nonetheless, would have been both material and favorable to Willis's defense. We recognize that evidentiary rulings lie within the broad discretion of the trial

court and will form the basis for reversal on appeal only upon an abuse of that discretion that amounts to prejudicial error.   Evid.R. 103; *State v. Graham*, 58 Ohio St.2d 350, 352, 390 N.E.2d 805 (1979).   Here, the trial court denied Willis his only witness, stating that "I don't do reenactments.   * * * This is not a TV program."   Under these circumstances, the trial court abused its discretion in disallowing Bickerstaff's testimony appearance at the trial.

{¶25} Therefore, the second assignment of error is sustained.

{¶26} Although the third, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error have been rendered moot by our disposition of Willis's second assignment of error, we must still address the sufficiency of the evidence argument in his tenth assignment of error due to double jeopardy concerns.   Willis maintains that the evidence was insufficient to sustain a conviction as to any count because the only evidence linking him to the crime were the two thumb prints found on the trunk of Slocum's car.

{¶27} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"   *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶28} Willis does not argue that the state failed to prove certain elements to sustain the convictions. Rather, he contends that the only evidence linking him to the crime was his thumb prints on the trunk of Slocum's car. He argues that this evidence, even if it "could be considered evidence as to the kidnapping and aggravated robbery, it does not provide evidence of all other charges in the indictment including particularly aggravate[d] burglary." We disagree.

{¶29} The evidence at trial revealed that Slocum interrupted the invasion at the Sanderfer home when she arrived at the house to pick up M.D. for school. She encountered one of the masked gunmen and a struggled ensued. The gunmen fled the scene and she called 911. Brown's DNA was identified on a torn t-shirt used as a mask that Slocum found in the Sanderfer's bathroom. Desirae recognized Willis's picture from a news broadcast on TV and identified him as one of the perpetrators.

{¶30} Three months later, Slocum was attacked while in the garage of her apartment building. As she exited her vehicle, she observed two masked men running toward her. One of the men hit her in the head with a gun, and the other man punched her in the face. They grabbed her purse and car keys. The men then duct-taped her eyes and mouth shut, duct-taped her ankles together, and tied her wrists together. The men pushed her in the trunk of her car and drove her around. The men demanded money from her and threatened to kill her if she did not tell them where the money was located. When speaking with Slocum, one of the men referred to her by her nickname. Eventually, the men released her. They partially opened the trunk and cut the tie around

her wrists. The men left the scene while she counted to 50. Slocum testified that her apartment was ransacked and $4,000 in cash and some jewelry were taken from her apartment.

**{¶31}** Upon processing Slocum's vehicle, two latent prints were lifted from the trunk lid that matched the right thumb and left thumb of Willis. The latent print examiner testified, "[i]n my line of work this is what we would consider a beautiful print. We don't normally get this much detail in the lifts we look at. This one has quite a lot and it's very, very visible." In addition, U.S. Marshals testified they went to Willis's apartment to arrest him. They knocked on Willis's door and announced that they were police. Willis was then seen jumping out of a third floor window fleeing on foot. The officers chased him on foot until they apprehended Willis while he attempted to climb an eight-foot, barbed-wire fence. When viewing this evidence in a light most favorable to the state, the jury could find Willis guilty of the charges beyond a reasonable doubt.

**{¶32}** Thus, the tenth assignment of error is overruled.

**{¶33}** Accordingly, judgment is reversed and the convictions are vacated. The matter is remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR