OPINION
{¶ 1} Appellant, Dirk L. Speakman ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, which convicted appellant of second degree complicity to felonious assault. For the following reasons, we affirm.
 {¶ 2} On November 17, 2003, in case No. 03CR11-7516, the Franklin County Grand Jury indicted appellant on three counts: one count of complicity to felonious assault; and two counts of felonious assault. A jury trial on the charges commenced on [D1] February 8, 2006, and one witness, the alleged victim, testified. At the end of the victim's direct testimony, appellant and the State of Ohio ("appellee") reached a plea agreement, whereby appellant agreed to plead guilty to one count of complicity to felonious assault, in violation of R.C. 2903.11 and2923.03, a second-degree felony.
 {¶ 3} Before the trial court, the prosecutor indicated that, pursuant to the plea agreement, appellant also would plead guilty to charges in three other cases then pending against him: one count of drug trafficking, in violation of R.C. 2925.03, a fourth-degree felony; attempted failure to appear, in violation of R.C. 2937.99 and 2923.02, a fifth-degree felony; and abduction, in violation of R.C. 2905.02, a third-degree felony. Appellee requested dismissal of all other charges pending in those three cases and requested a nolle prosequi in two additional cases pending against appellant.
 {¶ 4} The trial court engaged in a lengthy discussion with appellant concerning each individual guilty plea. As to each charge, appellant indicated his desire to plead guilty, as well as his understanding of the implications of those pleas.
 {¶ 5} The trial court also addressed appellant's legal counsel. Steven Denhart represented appellant in three of the relevant cases, and Mr. Denhart indicated his belief that appellant made the guilty pleas knowingly, intelligently, and voluntarily. Lewis Dye represented appellant in the three remaining cases, and Mr. Dye also indicated his belief that appellant made the guilty pleas knowingly, intelligently, and voluntarily.
 {¶ 6} Appellant then entered pleas of guilty to the four charges noted above. The court made a finding of guilty for each stated offense to which appellant pled guilty, continued the case until March 29, 2006, and ordered a presentence investigation.
 {¶ 7} On March 29, 2006, the court held a sentencing hearing. Both Mr. Denhart and Mr. Dye attended and appeared on appellant's behalf. The court gave a detailed presentation of the facts of each applicable charge and clarified the cases and charges at issue. When the court asked the prosecution to present its recommendation, Mr. Denhart immediately objected to the prosecution's presentation of letters written by appellant and recordings of telephone calls made by appellant, all while in prison. The court overruled the objection, and the prosecution proceeded.
 {¶ 8} The prosecutor recommended that the court impose maximum, consecutive sentences on the four charges. In particular, the prosecutor argued that appellant's letters and phone calls indicated his plans for criminal activity after his release.
 {¶ 9} Mr. Denhart then spoke on appellant's behalf and downplayed the significance of the letters and tapes. Mr. Denhart suggested that appellant should be given credit for pleading guilty. As to recorded conversations between appellant and his mother, Mr. Denhart stated:
 * * * He said, no plea bargain, no plea bargain. I will note for the Court, I think the Court's * * * aware of this. I came into this situation a little bit later. I was appointed later. There were conversations about a plea agreement with the prosecutor, and, to be honest with you, I thought it was a pretty good plea bargain for [appellant]. There was a confusion with the two lawyers involved. It is substantially less than what they are asking for now. Now, I guess what confuses me at this point, are they wanting to punish him and add years on because he spoke to his family members in this matter? They do not make mention of the cooperation that [appellant] gave the prosecution in the murder case. I don't want to go too far into that. I don't think that will benefit anybody. There was a lot of cooperation that he gave, and they don't mention that anywhere. * * * (Tr. at 131-132.)
 {¶ 10} Mr. Dye also spoke on appellant's behalf, as did appellant's mother, and Mr. Denhart spoke a second time.
 {¶ 11} Appellee requested an opportunity for rebuttal, the court agreed, and the transcript reflects the following:
 [APPELLEE'S COUNSEL]: Judge, they specifically opened the door and started talking about a plea offer that was out there. That was withdrawn. That was before the letters. That was before the jail tapes, and that was also with the understanding that [appellant] had information on a murder, a specific case, a specific defendant that was indicated to Mr. Dye, that he had specifically the written confession of a murderer that was going to be passed on to the State. That never happened. MR. DYE: Objection. That's a misstatement of what had happened. [APPELLEE'S COUNSEL]: Judge, may I finish? THE COURT: Let him finish. [APPELLEE'S COUNSEL]: When the time came to actually produce that piece of paper, he indicated through the defense counsel that it was gone, that he didn't have it any more, he couldn't account for it. So any discussion about a plea was completely moot. It was withdrawn by the State. That was before the State became aware of the extent of what was on the letters and what is in the tapes. * * * MR. DENHART: I will swear to this court I was not aware that upon a condition of him giving up a name, that this four year and 11 and a half months was contingent on that. That four years and 11 months were still open. [APPELLEE'S COUNSEL]: That's wrong. MR. DENHART: I was never told that there was a name to be given, ever. Now, if there is a discussion with Mr. Dye, I can't account for that. I was never told that, and that offer was still alive when I was involved. MR. DYE: Your Honor, the negotiations between [appellant] and the prosecution and the meeting that was held in the Franklin County Jail, that was completely about the jury trial for [another individual]. This was not contingent at all about giving up a name to an unrelated murder. It was simply about [that other individual]. [APPELLEE'S COUNSEL]: Do you remember, he had a written confession of a murder and he was to provide that paper to you to give to us? MR. DYE: That wasn't tied into — [APPELLEE'S COUNSEL]: You remember talking about that? MR. DYE: We talked about that. We decided not to do it. [APPELLEE'S COUNSEL]: When you say "we," you mean you and [appellant]? MR. DYE: Whomever, that's irrelevant. THE COURT: I think I have got the point. Anything else?
(Tr. at 137-139.)
 {¶ 12} Following the prosecution's statement, appellant also gave a statement to the court. The court thereafter made its own lengthy statement concerning the charges against appellant and the factors the court considered in sentencing appellant. In particular, the court found that consecutive sentences were necessary to protect the public from future crimes by appellant. The court did not mention counsels' discussion of a possible plea agreement that did not come to fruition.
 {¶ 13} As for specific sentencing, the court stated that it was imposing the maximum sentence, eight years, for the complicity to felonious assault charge in case No. 03CR11-7516; 18 months on the drug trafficking charge, "consecutive to" the felonious assault case; 12 months on the attempt to fail to appear charge, "again, consecutive to" the other two cases; and three years on the abduction charge "consecutive to the other three cases." (Tr. at 152.) Thus, appellant's total sentence was "13 ½ years[.]" (Tr. at 152.)
 {¶ 14} On April 12, 2006, a "CORRECTED JUDGMENT ENTRY" was filed in the trial court in case No. 03CR11-7516. The entry states that the court "imposes the following sentence: EIGHT (8) YEARS DETERMINATE SENTENCE" at the Ohio Department of Rehabilitation and Correction. (Emphasis omitted.)
 {¶ 15} On May 1, 2006, appellant filed a notice of appeal in case No. 03CR117516, stating that he was appealing "the judgment and entry in the above-styled case[.]" In his appeal, appellant raises the following assignments of error:
 Assignment of Error One WHEN A FACTUAL DISPUTE ARISES AT A SENTENCING HEARING REGARDING THE DEGREE OF COOPERATION RENDERED BY THE ACCUSED, THERE MUST BE A REMAND TO THE TRIAL COURT FOR A DETERMINATION REDUCING HIS SENTENCE. FAILURE TO DO SO WOULD RESULT IN AN UNFAIR, ILLEGAL SENTENCE CONTRA THE FOURTH, FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION. Assignment of Error Two WHEN A CORRECTED ENTRY REFLECTS A MAXIMUM SENTENCE ON ONE CASE, AND DOES NOT STATE IT TO BE CONSECUTIVE TO THE OTHER THREE CASES INVOLVED AT THE HEARING, THE RESULT IS THE MAXIMUM SENTENCE MUST RUN CONCURRENT TO THOSE OTHER THREE CASES.
 {¶ 16} In his first assignment of error, appellant asserts that the discussion at the sentencing hearing revealed, for the first time, a dispute between the prosecution and defense counsel as to the nature of the plea agreement. He then suggests that his plea was "contingent" because "part of the reason he pled in February was his belief that the information he had given to the prosecution originally in confidence, was going to be an integral part of the sentencing." The confusion surrounding this issue, appellant argues, suggests that his plea may not have been voluntary and, therefore, that a remand is necessary for an evidentiary hearing to determine an appropriate reduction in his sentence, presumably for his cooperation. We disagree.
 {¶ 17} We begin with the principle that a defendant's guilty plea must be knowing, intelligent, and voluntary. State v. Engle (1996),74 Ohio St.3d 525, 527. "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." Id. Thus, a court's acceptance of a guilty plea " 'must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.' " State v. Carpenter (1993),68 Ohio St.3d 59, 60, quoting Santobello v. New York (1971), 404 U.S. 257,262.
 {¶ 18} Crim.R. 11(C)(2) prohibits a court from accepting a guilty plea without addressing the defendant personally and doing all of the following first:
 (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *.
 (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
 {¶ 19} A trial court must comply strictly with the requirements of Crim.R. 11(C)(2) that relate to the waiver of constitutional rights.State v. Ballard (1981), 66 Ohio St.2d 473, paragraph one of the syllabus; State v. Payne, Franklin App. No. 05AP-1305, 2006-Ohio-4624;State v. Sahr, Franklin App. No. 05AP-503, 2006-Ohio-3260, at ¶ 7. A court must comply substantially with the requirements of Crim.R. 11(C)(2) that relate to the waiver of non-constitutional rights.State v. Nero (1990), 56 Ohio St.3d 106, 108; Payne at ¶ 8;Sahr at ¶ 7.
 {¶ 20} As to these requirements, the Ohio Supreme Court has stated that "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty." Ballard at 1 The court observed further, however, that the "failure to so proceed will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." Id. at 479-480 Thus, our focus on review "is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant." Id. at 480.
 {¶ 21} While appellant suggests to this court that the discussion at the sentencing hearing indicates that his plea may not have been voluntary, the discussion among the court, appellant, and his attorneys at the time he made his plea indicates otherwise. At the February 8, 2006 hearing, prior to taking appellant's plea, the court addressed appellant personally. In a detailed discussion that takes up nearly 20 pages of the transcript, the court gave a detailed discussion of the facts underlying each charge and a detailed explanation of the constitutional rights appellant would give up by pleading guilty. As to each individual constitutional right, the court asked appellant directly whether he understood that he would be giving up that right and, as to each right, appellant responded: "Yes, your Honor." (Tr. at 81.) Appellant asked no questions, nor did he seek clarification at any point. "When a trial court receives such unequivocal answers to its questions, it need not inquire further into the defendant's understanding." Payne at ¶ 11, citing Sahr at ¶ 12, and State v.Toops (Aug. 16, 2001), Franklin App. No. 00AP-1451.
 {¶ 22} At the end of the discussion with appellant, the court also asked appellant's two lawyers, Mr. Denhart and Mr. Dye, whether they were satisfied that appellant's pleas were being made knowingly, intelligently, and voluntarily. Each attorney answered in the affirmative.
 {¶ 23} In addition, appellant signed a written Entry of Guilty Plea in case No. 03CR11-7516. That document stated:
 * * * I hereby assert that no person has threatened me, promised me leniency, or in any other way coerced or induced me to plead "Guilty" as indicated above; my decision to plead "Guilty," thereby placing myself completely and without reservation of any kind upon the mercy of the Court with respect to punishment, represents the free and voluntary exercise of my own will and best judgment. * * *
 {¶ 24} At the February 8, 2006 hearing, the court spoke directly to appellant about that written entry:
 [THE COURT:] So, in this case, 03CR-7516, you have indicated by signing this entry of guilty plea and having your attorney, Mr. Denhart, sign it, that you are willing to change your not guilty plea and waive your rights to a further trial and plead guilty to a different offense. It's still a felony two. But it's called complicity to felonious assault, which, basically, means that * * * whatever your involvement was in this felonious assault against the victim in this case, it was at least two or more people that were involved and that you were complicit, and you were there and aided and abetted or part of the group that caused injuries to the victim in this case; do you understand that?
 THE DEFENDANT: Yes, your Honor.
 THE COURT: And you have indicated that you are willing to plead guilty; is that correct?
 THE DEFENDANT: Yes, your Honor.
(Tr. at 69-70.)
 {¶ 25} From our careful review of the plea hearing in this case, we cannot discern even the slightest suggestion that appellant's plea was not voluntary. To the contrary, we discern only the trial court's careful adherence to Crim.R. 11 requirements and appellant's understanding of the proceeding, his plea, and the implications of that plea. Therefore, we reject appellant's assertion here that his plea in case No. 03CR11-7516 was not voluntary.
 {¶ 26} We also reject appellant's suggestion that there remains a potentially unfulfilled plea agreement. Crim.R. 11(F) provides:
 When, in felony cases, a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court.
 {¶ 27} A negotiated plea bargain is subject to contract law standards.State v. Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853, at ¶ 50; State v.Burks, Franklin App. No. 04AP-531, 2005-Ohio-1262, at ¶ 18. Accordingly, "we must first examine the nature of the plea agreement to determine what the parties understood at the time of appellant's plea and determine whether and when a breach occurred." Id. at ¶ 19.
 {¶ 28} Here, as appellant's very argument suggests, the terms of the alleged agreement are unclear, at best. It appears from the discussion at sentencing that the prosecution had made a plea offer at one time, but withdrew it once appellant's letters and phone calls came to light. The terms of that proposal apparently called for appellant to produce a confession relating to a murder case; that confession never materialized. Regardless of the specific details, there was never any suggestion — by the prosecution, appellant or his two lawyers — that appellant had ever performed his part of the alleged agreement. Neither Mr. Denhart nor Mr. Dye produced a written plea agreement, and Mr. Dye even stated: "We talked about that. We decided not to do it." (Tr. at 139.)
 {¶ 29} In addition, appellant's suggestion now that he anticipated some sort of leniency based on his cooperation contradicts the Entry of Guilty Plea he signed. As we noted above, that entry states, in pertinent part: "I hereby assert that no person has * * * promised me leniency[.]"
 {¶ 30} In short, where a defendant has entered a guilty plea voluntarily, intelligently, and knowingly, and without any suggestion of anticipated leniency, a disagreement at sentencing between a defendant's two counsel about a plea agreement that cannot be produced, was never performed upon, and may not even relate to the case under discussion, is simply not enough to establish the terms of an agreement under Crim.R. 11(F) or to show a potential breach by the prosecution. Therefore, a remand to discuss it further is not appropriate or necessary. For these reasons, we overrule appellant's first assignment of error.
 {¶ 31} In his second assignment of error, appellant argues that the eight-year maximum sentence imposed in case No. 03CR11-7516 must run concurrently with the sentences imposed in the other three cases disposed of in the sentencing proceeding below, thus reducing his sentence from 13½ years to eight years. In support, appellant directs us to Hernandez v. Kelly, 108 Ohio St.3d 395, 2006-Ohio-126, in which the Ohio Supreme Court referred to the well-established maxim that a " 'court of record speaks only through its journal entries.' " Id. at ¶ 30, quoting State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan,100 Ohio St.3d 366, 2003-Ohio-6608, at ¶ 20. In addition, we note R.C.2929.41, which provides that prison terms "shall be served concurrently with any other prison term * * * imposed by a court of this state" unless the court orders the offender to serve the term consecutively to another prison term imposed. See R.C. 2929.41(A), (B)(3). Where a court's entry is silent and/or the record is ambiguous as to whether a consecutive or concurrent term applies, a court must resolve the ambiguity in favor of the defendant. State v. Carr, 167 Ohio App.3d 223,2006-Ohio-3073, at ¶ 4; City of Hamilton v. Adkins (1983),10 Ohio App.3d 217, 218; State v. Marbury, Franklin App. No. 03AP-233,2004-Ohio-3373, at ¶ 67.
 {¶ 32} Here, all parties agree that the entry in case No. 03CR11-7516 is silent as to whether it is concurrent with or consecutive to the sentences in the other three cases. While the court clearly stated on the record that it intended consecutive sentences, the entry in case No. 03CR11-7516 does not so indicate. From our record on appeal, however, we cannot determine what the entries in the other three cases indicate and, therefore, cannot determine whether an ambiguity exists with respect to appellant's total sentence. Appellant appealed only from the entry in case No. 03CR11-7516, which, standing alone, is not ambiguous. Thus, we have no basis upon which to determine the totality of appellant's sentence, and we certainly have no basis upon which to reduce appellant's total sentence. Finding no error in the case on appeal, we overrule appellant's second assignment of error.
 {¶ 33} In conclusion, we overrule appellant's first and second assignments of error. Therefore, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.