[Cite as *State v. Bass*, 2013-Ohio-4503.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                     :

          Plaintiff-Appellee,                 :

        No. 12AP-622
        (C.P.C. No. 11CR-09-5187)
        and

v.                                                :       No. 12AP-623
        (C.P.C. No. 11CR-09-5183)

Lamar R. Bass,                                    :

        (REGULAR CALENDAR)

          Defendant-Appellant.              :

---

## D E C I S I O N

Rendered on October 10, 2013

---

*Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

*Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

---

APPEALS from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Lamar R. Bass ("defendant"), appeals from his convictions of two counts of felonious assault with specifications, two counts of having a weapon while under disability, and one count each of aggravated burglary, discharge of a firearm on or near a prohibited premises with specification, and improperly handling firearms in a motor vehicle while under disability.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Defendant's convictions arise out of two separate incidents involving two different victims. The two incidents became the subject of separate indictments. On August 24, 2011, defendant shot Anthony Taylor, the boyfriend of his "white girl Courtney," because Taylor refused to give Courtney money to buy drugs from defendant.

(Tr. 87.) This incident gave rise to the charges in case No. 11CR-09-5183 ("first indictment"). On September 12, 2011, defendant kicked down the door of an apartment belonging to his ex-girlfriend, Shelly Hummel, and shot her new boyfriend, Andre Jordan, as he fled the apartment. This incident gave rise to the charges in case No. 11CR-09-5187 ("second indictment"). Police were not able to apprehend defendant at the scene of either incident. However, a day or so after the Jordan shooting, police located defendant in a vehicle parked near the home of Hummel's father. Defendant was arrested after leading police on a seven or eight minute car chase.

{¶ 3} Plaintiff-appellee, the State of Ohio ("State"), requested that the indictments be joined for trial inasmuch as the same gun was used in both incidents. Following an oral hearing, the trial court joined the two indictments. The case was tried to a jury and defendant was convicted.[1] The trial court sentenced defendant to a total of 21 years of imprisonment.

## II. ASSIGNMENTS OF ERROR

{¶ 4} Defendant appeals to this court assigning the following four assignments of error:

> [I.] The Appellant's right to a fair trial as memorialized in Article I, Section 10 and 16 of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution was impugned when the trial court erred by consolidating for trial Appellant's two indictments in violation of Rules 8(A) and 13 of the Ohio Rules of Criminal Procedure and when it failed to sustain Appellant's motion for relief from prejudicial joinder under Rule 14 of the Ohio Rules of Criminal Procedure.
>
> [II.] The consciousness of guilt instruction was contrary to law because it contained an improper comment on the evidence by the court and it was incomplete.
>
> [III.] In its June 25, 2012 entries the lower court erred in ordering that the charges in these two indictments be served consecutively to one another because, at the June 12, 2012 sentencing hearing, it failed to so specify on the record.

---

[1] The offenses of having a weapon under disability were tried to the court and defendant was convicted on both counts.

[IV.]   The trial court's sentence was contrary to law in violation of R.C. § 2953.08(A)(4) when it imposed consecutive sentences without making the required findings under R.C. § 2929.14(C)(4).

## III.  JOINDER OF INDICTMENTS

{¶ 5}   In his first assignment of error, defendant contends that the improper joinder for a single trial of the unrelated offenses in the two indictments unduly prejudiced his defense.

### A. Standard of Review

{¶ 6}   We review a trial court's decision on joinder of offenses for trial under an abuse of discretion standard.  *State v. Banks*, 10th Dist. No. 09AP-1087, 2010-Ohio-5714, ¶ 30, citing *State v. LaMar,* 95 Ohio St.3d 181,  2002-Ohio-2128.   "The term 'abuse of discretion' connotes more than a mere error in law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable."  *Id.*, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

### B.  Same or Similar Character

{¶ 7}   "The court may order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment."  Crim.R. 13.  Crim.R. 8(A) states that two or more offenses may be charged in the same indictment if they are of "the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."  *State v. Sullivan*, 10th Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 21.  The law favors joining multiple offenses in a single trial because it conserves judicial and prosecutorial time, lessens the considerable expenses associated with multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of inconsistent results in successive trials before different juries.  *Id.*, citing *State v. Walters,* 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 21.

{¶ 8}   The threshold argument in this case is whether the offenses charged in the two indictments are of the "same or similar character."  In our decision, the fact that both indictments arise out of shooting incidents that occurred only a few weeks apart, and with the same handgun, establishes that each indictment charges offenses of a similar

character. *See State v. Washington*, 1st Dist. No. C-090561, 2010-Ohio-3175 (where both shootings occurred within a five-week period, in the same location, and where both victims knew defendant and were able to identify him, the offenses were of the same or similar character and joinder of the offenses was proper). *Id. See also State v. Williams*, 73 Ohio St.3d 153, 158 (1995) (where separate offenses are joined for trial, evidence tending to prove that the same firearm was used in two offenses is pertinent to the evidence of "identity"); *State v. Nelms*, 10th Dist. No. 06AP-1193, 2007-Ohio-4664 (evidence of defendant's possession of alleged murder weapon offered in support of indictment charging illegal possession of weapons would have been admissible as "other acts" evidence in murder trial under second indictment, even if charges were severed). Additionally, we find that the character of the offenses charged in the two indictments is similar in the sense that both shootings were motivated by defendant's anger toward other males who interfered in his personal relationships with certain females.

{¶ 9} While defendant asks the court to focus on the fact that the offenses were committed against two different victims, at different locations and at different times, such distinctions do not mean that the two indictments charge offenses of dissimilar character. Indeed, the most serious offenses charged in each indictment, felonious assault, are of similar character and the related weapons charges involve the same firearm.

{¶ 10} In short, we find that the offenses charged in the two indictments are similar, and that the trial court did not abuse its discretion in granting the State's motion. We also reject defendant's claim that the prosecutor's oral argument in the penalty stage proves that the prosecutor believed the indictments arose out of "completely unrelated incidents." (Tr. 503.) The prosecutor made the remark in advocating consecutive sentences for the convictions under two indictments. When viewed in proper context, the prosecutor's remarks are not inconsistent with joinder. The fact that the charged offenses are of similar character does not mean that there should not be separate punishment for multiple convictions.

### C. Defendant's Claim of Prejudice

{¶ 11} An accused may move the trial court, pursuant to Crim.R. 14, to sever counts of an indictment on the grounds that he or she will be prejudiced by the joinder of multiple offenses. *LaMar* at ¶ 49. And, "[i]f it appears that a defendant * * * is prejudiced

by a joinder of offenses * * * in an indictment, * * * the court shall order * * * separate trials of counts * * * or provide such other relief as justice requires." Crim.R. 14. The defendant bears the burden to prove prejudice and must show that the trial court abused its discretion in denying severance. *Washington.*[2]

{¶ 12} Defendant argues that the jury may have mistakenly considered his flight from police as evidence of his guilt of the offenses charged in both indictments, when such evidence is relevant only as to the offenses charged in the second indictment. Defendant also contends that he was prejudiced in his defense to the charges in the second indictment by Taylor's testimony that he saw defendant sitting in a vehicle with a gun on his lap "a couple of months before I was shot." (Tr. 82.) Defendant asserts that this evidence was admissible only when offered to prove his consciousness of guilt as to the drive-by shooting charge in the first indictment. Finally, defendant argues that the evidence of his involvement with drug trafficking unfairly prejudiced his defense of the charges in the second indictment, which had nothing to do with drugs.

{¶ 13} When defendant asserts that his defense will be prejudiced by the joinder of two or more indictments in a single trial, the prosecution may negate defendant's claim of prejudice with a showing that: (1) the evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. *Banks*, citing *State v. Schaim,* 65 Ohio St.3d 51, 59 (1992). The former is generally referred to as the "other acts test," while the latter is known as the "joinder test." The two tests are disjunctive, so that the satisfaction of one negates a defendant's claim of prejudice without consideration of the other. *Sullivan* at ¶ 22, citing *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379 (10th Dist.). The defendant must furnish the trial court with sufficient information to weigh the factors favoring joinder against the defendant's right to a fair trial. *Id.*, citing *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).

---

[2] Although defendant did not file a motion to sever the indictments, defendant did renew his "motion contra" joinder at the conclusion of all the evidence. (Tr. 389, 392.) Accordingly, we find that defendant did not waive the issue of improper joinder for purposes of appeal.

### 1. Other Acts Test

{¶ 14} As to the "other acts test" under Evid.R. 404, other acts evidence is inadmissible when offered to prove the criminal propensity of the accused. *State v. Parnell*, 10th Dist. No. 11AP-257, 2011-Ohio-6564, ¶ 31, citing *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994). However, under Evid. R. 404(D), evidence of "other crimes, wrongs, or acts" is admissible when offered "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*, citing *State v. Woodard*, 68 Ohio St.3d 70, 73 (1993). Evidence of other crimes may be introduced to prove identity if the defendant " ' "committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." ' " *Sullivan* at ¶ 25, quoting *State v. Shedrick*, 61 Ohio St.3d 331, 337 (1991), quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975).

{¶ 15} As noted above, we believe that the character of the offenses charged in the two indictments is similar. Evidence that defendant used a firearm is clearly admissible evidence when offered to prove defendant's guilt of a majority of the charged offenses in each indictment. *Williams*; *Nelms*. The fact that defendant used the same firearm in committing the offenses charged in each indictment is also admissible when offered to prove opportunity, intent, preparation, plan, or absence of mistake or accident. *Washington.* Evidence that both victims had allegedly interfered with defendant's women would be admissible when offered to prove defendant's motive to commit the felonious assault charges in the two indictments.

{¶ 16} We disagree with defendant's contention that the evidence of flight was relevant only as to the second indictment. Contrary to defendant's assertion, " '[a]dmissibility of evidence of flight has not been made contingent upon how much time passes between the offense and the defendant's flight.' " *State v. Willis*, 8th Dist. No. 98847, 2013-Ohio-2531, ¶ 13, quoting *State v. Alexander,* 8th Dist. No. 51784 (Feb. 26, 1987). While defendant's flight is of greater probative value when offered to prove defendant's consciousness of guilt as to the offenses charged in the second indictment, flight occurred within a period of time reasonably near the Taylor shooting and is

admissible to prove defendant's consciousness of guilt of the offenses charged in the first indictment. Thus, the State negated defendant's particular claim of prejudice.

{¶ 17} We also reject defendant's claim that his defense to the handgun charges in the second indictment was unfairly prejudiced by Taylor's testimony that he saw defendant in possession of a firearm "a couple months before I was shot." (Tr. 82.) Evidence that defendant was seen in possession of a handgun a few months prior to the Jordan shooting would have been admissible in a separate trial of the second indictment when offered to prove defendant's opportunity, intent, preparation or plan to shoot Jordan. This is particularly true given Hummel's testimony that defendant had threatened to shoot any man he found in her apartment. The fact that defendant shot at Taylor from a vehicle but shot at Jordan in an apartment building is a distinction without a difference. The important fact is that Taylor saw defendant in possession of a handgun prior to the Jordan shooting.

{¶ 18} Defendant insists that the jury gave great weight to Taylor's testimony inasmuch as one of the juror's asked the court whether such testimony was admissible. However, our review of the transcript shows that the jury did not specifically ask whether the testimony was admissible as to any particular charge or for any particular purpose. (Tr. 482.) Thus, evidence of the alleged prejudice is not shown in the record.

{¶ 19} Moreover, even if we were to find that the Taylor evidence would not have been admissible if the second indictment had been tried separately, given the mountain of evidence to support defendant's guilt of the handgun offenses charged in the second indictment, the potential prejudice is negligible. Indeed, Hummel testified that defendant took his handgun with him everywhere. Both Jordan and Hummel testified that a hooded individual, brandishing a handgun, broke in the door to Hummel's apartment and that the individual shot Jordan as he fled the apartment. Hummel identified defendant as the assailant, and a shell casing found at the scene matched a shell casing recovered at the Taylor shooting.

{¶ 20} With regard to the evidence of defendant's involvement in drug activities, we find that such evidence would not have been admissible if offered in a separate trial of the second indictment. Even the prosecutor concedes that the drug evidence is not relevant to any of the offenses charged in the second indictment. We also agree that

defendant's criminal propensity may be inferred from the drug evidence, and that such an inference could have improperly influenced the jury in deliberating defendant's guilt of the offenses charged in the second indictment. Accordingly, the "other acts test" does not negate this particular claim of prejudice.

### 2. Joinder Test

{¶ 21} As noted above, the State may also negate a claim of prejudice by showing that the evidence of each crime is simple and distinct. The evidence relevant to the second shooting consists almost entirely of the eyewitness testimony of Jordan and Hummel. Their testimony is corroborated both by the physical evidence gathered at the scene, defendant's flight from police, and Hummel's recollection of defendant's prior threat. While the offenses charged are of similar character, the two indictments arise out of incidents that occurred on different days involving different victims. Thus, there was little chance that the jury would be unable to set aside the evidence of defendant's drug activity in determining defendant's guilt as to the offenses charged in the second indictment.

{¶ 22} Moreover, the trial court instructed the jurors as follows:

> Each indictment and each offense constitutes a separate and distinct matter for you to consider. You must independently weigh and consider each - - consider the evidence applicable to each offense and each indictment
>
> Your verdict must not be influenced by your decision as to any one or more offense or indictment.
>
> You may find the defendant not guilty or guilty of any one or all of the offenses charged in either indictment.

(Tr. 459-60.)

{¶ 23} Presuming that the jury followed the instructions, as we are required to do in the absence of evidence to the contrary, the possibility of jury confusion was extremely remote. In short, applying the "joinder test," we find that the evidence relevant to the offenses charged in the two indictments is both simple and distinct. Accordingly, defendant's claim of prejudice was negated by the State under the "joinder test."

{¶ 24} Based upon the foregoing, we hold that the trial court did not abuse its discretion in joining the two indictments for trial and in denying defendant's request for separate trials. Defendant's first assignment of error is overruled.

## IV. CONSCIOUSNESS OF GUILT

{¶ 25} In defendant's second assignment of error, defendant contends that the trial court abused its discretion by improperly instructing the jury on "consciousness of guilt." When reviewing a trial court's jury instruction, the proper standard of review for an appellate court is whether the trial court abused its discretion given the facts and circumstances of the case. *State v. Gover,* 10th Dist. No. 05AP-1034, 2006-Ohio-4338. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). Additionally, " '[i]n considering whether a particular portion of a trial court's instructions was improper, the instructions must be viewed in their entirety.' " *State v. Brady,* 9th Dist. No. 22034, 2005-Ohio-593, ¶ 7, quoting *State v. Pitts,* 6th Dist. No. L-96-256 (Sept. 30, 1997), citing *Schade v. Carnegie Body Co.,* 70 Ohio St.2d 207, 210 (1982).

{¶ 26} The trial court instructed the jury as follows:

> In this case there was evidence that the defendant fled from justice. You are instructed that you may not presume the defendant guilty from such evidence. You may, however, infer a consciousness of guilt regarding the evidence of defendant's alleged flight.
>
> An accused's flight and related conduct may be considered as evidence of consciousness of guilt and thus of guilt itself.

(Tr. 459.)

{¶ 27} " 'Flight from justice "means some escape or affirmative attempt to avoid apprehension." It is well established that evidence of flight is admissible as tending to show consciousness of guilt. Thus, a trial court does not abuse its discretion by issuing an instruction on flight if sufficient evidence exists in the record to support the charge.' " *State v. Lozada,* 8th Dist. No. 94902, 2011-Ohio-823, ¶ 17, quoting *State v. Benjamin,* 8th Dist. No. 80654, 2003-Ohio-281, ¶ 29-31.

{¶ 28} Defendant argues that the phrase "there was evidence that the defendant fled from justice" implies that defendant's "behavior was leavened with a nefarious

purpose." (Appellant's Brief, 51.)  Defendant also contends that the instruction presumes that defendant did, in fact, flee from police.  Neither argument has merit.

{¶ 29}  A number of courts have used the phrase "from justice" in discussing the propriety of a consciousness of guilt instruction.  *See Lozada; Benjamin; State v. Allen,* 5th Dist. No. 2009-CA-13, 2010-Ohio-4644.  We also disagree that the instruction presumes that flight was established.  The instruction merely states that there was evidence of flight.  Whether defendant fled from justice is a question clearly left to the jury.

{¶ 30}  Defendant also claims that the instruction is incomplete inasmuch as it does not remind the jury that (1) defendant's flight may be motivated by factors other than consciousness of guilt, and (2) that it must find that the defendant's guilty conscious is due to the charge in question.  However, a jury instruction "should not be held erroneous merely because every condition to a recovery or defense is not embraced in each paragraph."  *State v. Nichols*, 9th  Dist. No. 24900, 2010-Ohio-5737, citing Y*oungstown Municipal Ry. Co. v. Mikula,* 131 Ohio St. 17, 20 (1936).

{¶ 31}  Although we agree that the instruction given by the trial court is brief, we note that it is consistent with Ohio law as it pertains to consciousness of guilt.  *See State v. Eaton,* 19 Ohio St.2d 145, 160 (1969).  The instruction informs the jury that defendant's flight "may be considered as evidence of consciousness of guilt."  (Jury Instructions, 7.)  Thus, the jury was free to consider other reasons for defendant's conduct.  Similarly, to the extent that defendant claims that the jury should have been told to consider evidence of flight only in reference to the offenses charged in the second indictment, we have held that such was relevant to the offenses charged in both indictments, not just the second.  Moreover, the trial court instructed the jury as follows: "Each indictment and each offense constitutes a separate and distinct matter for you to consider.  You must independently weigh and consider each - - consider the evidence applicable to each offense and each indictment." (Tr. 459-60.)

{¶ 32} Based upon the foregoing, we cannot say that the trial court abused its discretion in giving the consciousness of guilt instruction.  Accordingly, defendant's second assignment of error is overruled.

{¶ 33}  In defendant's third assignment of error, defendant contends that the trial court failed to inform defendant, in open court, that his sentences on the two indictments were to run consecutively.  We disagree.

{¶ 34} A defendant has a due process right, embodied in Crim.R. 43, to be "physically present at every stage of the criminal proceeding and trial, including * * * the imposition of sentence."  Crim.R. 43(A)(1).  *See also State v. Railey,* 1st Dist. No. C-120029, 2012-Ohio-4233.  "Where a court's entry is silent and/or the record is ambiguous as to whether a consecutive or concurrent term applies, a court must resolve the ambiguity in favor of the defendant."  *State v. Speakman*, 10th Dist. No. 06AP-408, 2006-Ohio-6378, ¶ 31.

{¶ 35} In this case, the two sentencing entries issued by the trial court specifically state that the prison term for his convictions on the first indictment are to be served consecutively with the prison term for the convictions on the second indictment.[3] Defendant argues, however, that the trial court was unclear on this point when it sentenced defendant in open court.  The transcript of defendant's sentencing hearing shows the following:

> THE COURT:  Okay, Mr. Benton.  Mr. Bass - - sir, the Court at this time, in considering the factors the Court is required to consider, in case number 5183, the Court imposes the following sentence: On count one, three years; count two, three years; count three, 18 months; court four, three years. In addition, the Court will impose the mandatory five years for the drive-by shooting and three years for the firearm specification. That all is for a total of 11 years on this case.
>
> MR. BENTON:  Your Honor, what was the sentence on count four?
>
> THE COURT:  Count four was three years.

---

[3] The sentencing entry in case No. 11CR-09-5183 provides in relevant part: "The Specification as to Count One shall be served concurrent with Specification One as to Count Two and consecutive to Specification Two as to Count Two.  Counts One, Two, Three and Four shall be served concurrent with each other, consecutive to all Specifications, and consecutive to Case No. 11CR-09-5187, for a total sentence of Eleven (11) years." The sentencing entry in case No. 11CR-09-5187 provides in relevant part: "All specifications shall be served concurrent with each other.  Counts One, Two and Three shall be served concurrent with each other, consecutive to all Specifications, and consecutive to Case No. 11CR-09-5183, for a total sentence of Ten (10) years."

MR. BENTON:  Okay.

THE COURT:  With respect to case number 5187, the Court imposes the following sentence: On count one, seven years; count two, six years; and count three, twelve months. Those are to be served concurrently. In addition, the Court will add an additional three years for the firearm specification, for a total of 21 years.

(Tr. 514-15.)

MR. BENTON:  Judge, I'm still a little confused.

THE COURT:  Mr. Bass, the Court imposed 21 years. I took into consideration your age at this time. Twenty-one years is sufficient time for you to hopefully grow up and realize - - you'll be 48 when you are released - - that guns and you don't get along well.

MR. BENTON:  Your Honor, that's the total sentence as to both cases?

THE COURT: That's the total sentence on both cases. Twenty-one years.  Twenty-one years.

(Tr.  516.)

{¶ 36} Defendant concedes that, in all probability, the trial court intended to sentence defendant to consecutive terms.  Defendant maintains, however, that the trial court's failure to explicitly state its intentions on the record leaves us with no choice but to reverse the trial court sentencing entry and order that the sentences are to run concurrently.  We disagree.

{¶ 37} It is clear from the trial transcript that defendant was informed that he was to serve a 21-year prison term.  Defendant was told, in no uncertain terms, that he would be 48 years old when he was released from prison.  Ohio courts have repeatedly stated that "the trial court is not * * * required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences." *State v. Hubbard,* 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 86, quoting *State v. Farnsworth,* 7th Dist. No. 12 CO 10, 2013-Ohio-1275, ¶ 8. *See also State v. Bailey,* 10th Dist. No. 12AP-699, 2013-Ohio-3596, ¶ 43; *State v. Frasca,* 11th Dist. No. 2011-T-0108, 2012-Ohio-3746, ¶ 57; *State v. Murrin,* 8th Dist. No. 83714, 2004-

Ohio-3962, ¶ 12. The only reasonable conclusion to draw from the trial transcript is that the 11-year prison term for the convictions under the first indictment is consecutive to the ten year term for the convictions under the second indictment. The fact that the trial court did not use the word "consecutive," in defendant's presence is not fatal to the validity of the sentence. The record demonstrates that defendant understood that his sentences were consecutive, and the sentencing entries are consistent with the sentence imposed in open court.

{¶ 38} Accordingly, defendant's third assignment of error is overruled.

{¶ 39} In his fourth assignment of error, defendant contends that the trial court erred when it ordered his sentences to run consecutively without expressly considering the factors set out in R.C. 2929.14(E)(4), as amended by House Bill 86 ("H.B. No. 86").

{¶ 40} H.B. No. 86 took effect on September 30, 2011. R.C. 2929.14(E)(4) now requires the trial court to make three findings before imposing consecutive sentences: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the subsections (a), (b), or (c) apply. *Bailey.* The State concedes that the trial judge did not make the findings required under R.C. 2929.14(C)(4) even though defendant requested that he do so. (Tr. 513-14.) The question on appeal to this court is whether the trial judge should have made the required findings on the record before imposing consecutive sentences.

{¶ 41} R.C. 1.58(B) states: "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." In this case, defendant committed his crimes prior to September 30, 2011, the effective date of H.B. No. 86. However, the trial court did not sentence defendant until June 18, 2012. This court has consistently held that where an offender is sentenced to multiple prison terms after September 30, 2011, the trial judge must make the findings required under amended R.C. 2929.14(C)(4) before imposing a consecutive sentence. *See Bailey* at ¶ 42. *See also State v. Wilson,* 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 17; *State v. Roush,* 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 79; *Hubbard.*

{¶ 42} The State makes several arguments in support of its position that H.B. No. 86 does not apply to individuals who committed crimes prior to the effective date of the amendment. However, subsequent to the filing of the State's brief in this case, this court issued a series of decisions rejecting the arguments advanced by the State herein. *See, e.g., Bailey*; *Wilson*; *Roush;* and *Hubbard*. In *Roush* at ¶ 49, and *Wilson* at ¶ 17, we rejected the States contention that, given the language of H.B. No. 86, Section 11, the General Assembly did not intend for R.C. 1.58(B) to apply to H.B. No. 86.[4] We also rejected the State's claim that the General Assembly did not intend R.C. 1.58(B) to be applied to R.C. 2929.14(C)(4) given the language used in H.B. No. 86, Section 5. *Roush* at ¶ 49; *Wilson* at ¶ 17.[5] We see no reason to retreat from the reasoning of our recent decision. Accordingly, we find the State's argument to be without merit.

{¶ 43} The State's final argument is that R.C. 1.58 does not apply to this case inasmuch as amended R.C. 2929.14 does not reduce the penalty for any offense. *State v. Edwards,* 6th Dist. No. WD-11-078, 2013-Ohio-519. However, in this case, defendant was convicted by the trial court of two counts of having a weapon while under disability, a felony in the third degree, and he was sentenced to 12 months in prison for each offense. Under amended R.C. 2929.14(A)(3)(b), the minimum penalty for having a weapon while under disability is reduced from 12 months to nine months. *Bailey* at ¶ 42. Accordingly, even if we adopt the State's position, H.B. No. 86 would still apply to the facts of this case. *See Id.* at ¶ 41 (*Edwards* distinguished.).

---

[4] H.B. No. 86, Section 11 states: "In amending division (E)(4) of section 2929.14 * * * of the Revised Code in this act, it is the intent of the General Assembly to simultaneously repeal and revive the amended language in those divisions that was invalidated and severed by the Ohio Supreme Court's decision in *State v. Foster* (2006), 109 Ohio St.3d 1. The amended language in those divisions is subject to reenactment under the United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, and the Ohio Supreme Court's decision in *State v. Hodge* (2010), ... Ohio St.3d ..., Slip Opinion No. 2010-Ohio-6320 and, although constitutional under *Hodge, supra*, that language is not enforceable until deliberately revived by the General Assembly."

[5] H.B. No. 86, Section 4 states: "The amendments to * * * division (A) of section 2929.14 of the Revised Code * * * made in this act apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section and to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable."

{¶ 44} In short, we hold that the trial court erred by failing to sentence defendant in accordance with H.B. No. 86. We do not believe, however, that we must order that the sentences run concurrently. Indeed, the applicable case law holds that when the trial court fails to articulate the appropriate findings required by R.C. 2929.14(C)(4), the case is to be remanded for the trial judge to consider whether consecutive sentences are appropriate under H.B. No. 86 and, if so, to enter the proper findings on the record. *Id.*; *Wilson*; *Roush*; *Hubbard*; and *State v. Cowan*, 8th Dist. No. 97877, 2012-Ohio-5723, ¶ 44.

{¶ 45} For the foregoing reasons, defendant's fourth assignment of error is sustained in part and overruled in part.

## V. DISPOSITION

{¶ 46} Having overruled appellant's first, second, and third assignments of error, but having sustained the fourth assignment of error in part and overruled in part, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. This case is hereby remanded to that court to consider whether consecutive sentences are appropriate under H.B. No. 86 and, if so, to enter the proper findings on the record.

*Judgments affirmed in part*
*and reversed in part;*
*cause remanded.*

SADLER and McCORMAC, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate
District, assigned to active duty under the Ohio Constitution,
Article IV, Section 6(C).

_____